### No. 8869.

### THE STATE OF LOUISIANA EX REL. ROBERT BREWSTER ET AL. VS. THE CITY OF NEW ORLEANS.

The deputies designated by the Criminal Sheriff of the Parish of Orleans for duty at the Parish Prison, and as such entrusted with the legal custody of the prisoners therein confined, are *not employees of the Parish Prison* within the meaning of Act No. 64 of the legislature of 1882, which requires that the salaries of such employees be paid by the City of New Orleans. These deputies must look to the fund created by Article 146 of the Constitution for the payment of their salaries. Courts of justice cannot overlook a clear and unambiguous constitutional provision for the purpose of ascertaining that the framers of the Constitution intended to make a different provision on the same subject matter, by an investigation into the journal of the convention.

The instrument published under the authority of the State, as the Constitution, is the organic law which all courts must expound, support and obey.

APPEAL from the Civil District Court for the Parish of Orleans. Houston, J.

---

*Henry B. Kelly* for the Relators, Appellants.

*Chas. F. Buck*, City Attorney, for Respondent and Appellee.

---

The opinion of the Court was delivered by

POCHÉ, J.   The object of this proceeding is to compel, by mandamus, the City Council to provide for the payment of the salaries of the

deputies of the Criminal Sheriff of the Parish of Orleans, who are detailed for duty at the Parish Prison, whose salaries, as fixed by law, amount annually in the aggregate to nine thousand six hundred dollars. This appeal is taken from a judgment rejecting their demand.

Relators' main reliance is on Act No. 64 of 1882 of the legislature, which provides that from and after the first of January, 1883, the salaries of the employees of the Parish Prison of the Parish of Orleans shall be paid by the City of New Orleans.

The exception of no cause of action was well taken, and the judgment of the lower court must, therefore, be affirmed.

The pleadings show that the deputy sheriffs are appointed by the Criminal Sheriff with the approval of the Judges of the Criminal District Court. Hence, after such appointment they become, under their chief, executive officers of the Criminal District Court, and through their chief they are responsible to that court alone.

Under the provisions of Article 147 of the Constitution, "the maintenance and support of prisoners confined in the Parish of Orleans, upon charges or conviction for criminal offenses, shall be under the control of the City of New Orleans." And from this provision it is argued that the framers of the Constitution intended to include the expense of the custody of such prisoners. And several quotations are made from the journal of the convention tending to show such an intention. Many reasons could be invoked to justify such an intention and to demonstrate the wisdom of such a course. But the language of the provisions of that instrument, on the subject of our present inquiry, is too plain to admit of judicial interpretation, predicated upon a research to discover the latent intention of the framers of the Constitution. Such investigation should be resorted to in cases of doubtful meaning only. But in this case, the conclusion so ably urged by relators' counsel would necessitate the interpolation of a whole article in the instrument. It would appear from an inspection of the journal that the principle contended for was actually intended to be incorporated in the instrument by the adoption of an amendment, which was inadvertently omitted by the committee on revision, but a court of justice can recognize only the Constitution as published under the authority of the State, and has no power to correct the errors of the committee entrusted by the convention itself with the revision and publication of the Constitution. No principles of law or jurisprudence can be invoked as clothing the journal of the convention with more binding force and authenticity than the Constitution as published. Such a doctrine would be fraught with great danger and would create a state of painful uncertainty touching the authenticity of the organic law of the State.

The pivotal question in this case therefore involves the proper construction of the Act 64 of 1882, with a view to ascertain whether the legislator intended to include deputy sheriffs in the term *employees of the Parish Prison.*

. It is very clear to our minds that such was not his intention.

The duty entrusted to the City of New Orleans by Article 147 of the Constitution was to provide for the maintenance and support of the prisoners; and by that must be understood the duty of furnishing shelter, food, clothing and to supply other physical care; but evidently not the custody of, nor the responsibility for the prisoners, which were then, and are yet, by law placed under the charge of the Criminal Sheriff of the Parish.

As he cannot personally perform such duty, he executes it by means of his deputies, who do not, however, cease to be his deputies, or officers of the criminal court, by reason of their being designated to perform the duties of the Criminal Sheriff touching the custody of the prisoners confined in the Parish Prison.

Under the provisions of Article 146 of the Constitution, the salary of the sheriff and of his deputies is to be paid out of the fund provided for in the first part of the Article. And the legislature is expressly prohibited from adopting any other mode for their payment.

Hence, it is clear to our minds that Act No. 64 could not contemplate deputy sheriffs who have the legal custody of the prisoners under the control of the criminal court, when it provided for the payment of *employees* of the prison entrusted with the duty of ministering to the physical wants of the prisoners under the control of the City of New Orleans.

As the Criminal Sheriff has the constitutional right of removing from office any one of his deputies, he has *a fortiori* the right of recalling and replacing any and all the deputies whom he may have selected for duty at the Parish Prison, and therefore these deputies are *his employees* and not the employees of the prison or of the City. Art. 141.

. Our conclusion is, that the City is not and cannot be held liable for the payment of the salaries of relators when performing the duty of the Criminal Sheriff in the legal custody of the prisoners confined in the Parish Prison; and that relators are, therefore, not entitled to the relief which they seek.

Judgment affirmed.